**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**EVENT PARTNERS, INC.**, a Florida
corporation,

    *Plaintiff*,

v.

**STEPHEN D. BECK**, an individual,
and **JACKSON DAWSON
COMMUNICATIONS, INC.**, a Michigan
corporation,

    *Defendants.*

Case No. 2:25-cv-11313

Hon. Mark A. Goldsmith
Mag. Anthony P. Patti

| | |
|---|---|
| R.J. Cronkhite (P78374) | Daniel C. Waslawski (P78037) |
| Christopher A. Chesney (P80969) | Joanna H. Dreaver (P82154) |
| Cronkhite Counsel PLLC | Starr, Butler & Stoner, PLLC |
| 36800 Woodward Ave., Ste. 310 | 20700 Civic Center Dr., Ste. 290 |
| Bloomfield Hills, MI 48304 | Southfield, MI 48076 |
| T: (248) 309-8602 | (248) 554-2700 |
| F: (248) 256-2555 | dwaslawski@starrbutler.com |
| rj@cronkhitelaw.com | jdreaver@starrbutler.com |
| chris@cronkhitelaw.com | *Attorneys for Defendants* |
| *Attorneys for Plaintiff* | |

**STIPULATED ORDER REGARDING PROTOCOL FOR**
**DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Upon the stipulation of the undersigned Parties, through their respective counsel, and

the Court being fully advised in the premises,

    **IT IS HEREBY ORDERED** as follows:

1.  **General Terms**.

(a)  This Order governs the discovery and production of ESI in this matter.

(b)  This Order shall not enlarge, reduce, or otherwise affect the proper scope of discovery in this case, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.  Additionally, this Order does not enlarge, reduce, or otherwise affect the preservation obligations of the Parties.

(c)  The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden with respect to any ESI, Data Source, or search term, the Parties shall promptly confer in an effort to resolve the issue.  If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may seek relief from the Court for good cause shown.

(d)  The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may move the Court for relief.

2.  **Definitions**.

(a)  "**Electronically Stored Information**" or "**ESI**" shall include all electronic files, documents, data and information within the definition of Federal Rule of Civil Procedure 34(a)(1)(A).

(b)	**"Bates Number"** means a unique number affixed to each page of a document produced in this matter.

(c)	**"Custodian"** shall refer to an individual who has, or is likely to have, possession, custody, or control over electronically stored information that may be relevant to the litigation.

(d)	**"Document"** shall include both Hardcopy Documents and Electronic Documents as defined herein.

(e)	**"Database"** means a collection of related Electronic Data organized (often in rows, columns and tables) in an electronic environment for a particular purpose. Databases often perform various functions, including data analysis, data sorting and report generation.  Microsoft Access and Oracle are common database platforms.

(f)	**"Data Sources"** means, by way of example and not limitation, desktop computers, tablets, laptops, mobile/cellular phones, servers, flash and thumb drives, external hard drives, personal and work email accounts, cloud storage services such as DropBox, Google Drive, and the like.

(g)	**"Electronic Document"** means Documents existing in electronic form at the time of collection, including but not limited to: emails, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

(h)     **"Hardcopy Document"** means Documents existing in paper form at the time of collection.

(i)     **"Metadata"** means corresponding data about and Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (e.g., date created, date sent, author).

(j)     **"Native Format"** means the format in which an Electronic Document was created and used (also referred to in terms of "**Native Production**").

(k)     **"OCR"** stands for "Optical Character Recognition." OCR is a technology that recognizes text within a digital image.

(l)     **"Party"** means any one of the plaintiff or defendants in the above-captioned matter. **"Parties"** refers to one or more Party.

(m)     **"Producing Party"** means the Party producing Documents and ESI in response to a discovery request propounded by another Party.

(n)     **"Receiving Party"** means the Party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

(o)     **"Requesting Party"** means the Party propounding a discovery request.

(p)     **"Responding Party"** means the Party to whom a discovery request is propounded.

3. **ESI Parameters**. Within 14 days of entry of this Order, or at a later time if agreed to by the Parties, each Party shall provide each other Party an ESI Disclosure, signed by that Party's counsel, containing the following information:

(a) Identification of Custodians and Data Sources.

    (i) Custodians. A list of Party and third-party Custodians. The individuals shall be identified by name, job title, connection to the instant litigation, and Data Sources under their possession, custody, or control.

    (ii) Custodian Data Sources. Each Party shall identify all known Data Sources under each Custodian's possession, custody, or control that does, or is likely to have, potentially relevant ESI ("**Custodian Data Sources**"). Custodian Data Sources include, by way of example and not limitation, desktop and workstation computers, tablets, laptops, mobile/cellular phones, flash and thumb drives, external hard drives, work and personal email accounts, and individual cloud storage services. The identification shall include enough information to enable the other Parties to understand the type of Data Source and to distinguish it from other Data Sources. Custodian Data Sources *shall not* include network locations or databases to which the Custodian has access but does not routinely utilize.

(iii) <u>Non-Custodian Data Sources</u>. Each Party shall identify a list of Non-Custodial Data Sources that do contain, or are likely to contain, discoverable ESI. Non-Custodian Data Sources are typically shared or multi-user Data Sources that are not under a single Custodian's custody or control, or within a single Custodian's possession, and include, by way of example and not limitation, computer servers and networks, shared drives, and shared/multi-use cloud storage services.

(iv) <u>Inaccessible Data</u>. Each Party shall identify the Data Sources likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). ESI that is not reasonably accessible may include, but is not limited to, anything stored on legacy systems or electronic media of a format no longer in use, maintained in redundant electronic storage, or for which retrieval involves cost disproportionate to the amount in controversy.

(v) <u>Third-Party Data Sources</u>. Each Party shall identify a list of third-Party data sources, if any, likely to contain discoverable ESI (e.g., non-employee third-Party email providers, non-employee mobile device providers, cloud storage) and, for each such source, the extent to which

6

a Party is (or is not) able to preserve information stored in the third-Party data source.

(b)   <u>Custodian Designations</u>.

    (i)   Before serving discovery, or within a reasonable time thereafter, each Party shall provide a written list that identifies up to, but not more than, eight (8) Custodians ("**Custodian Designations**"). The Custodian Designations must comprise only those Custodians that the Requesting Party believes in good faith have, or are likely to have, relevant ESI.

    (ii)   A Party's Custodian Designations may not total more than eight (8) unique Custodians for each opposing Party—absent stipulation, a showing of good cause, or a Court order.

    (iii)   After serving its Custodian Designations, a Party may, upon good cause, including additional information obtained through discovery, add up to four (4) more Custodians to its Custodian Designations, which then supplement the original Custodian Designations.

4.   **Preservation**.

(a)   Each Party represents that it has issued a litigation hold to a Party representative with authority to implement procedures necessary to preserve potentially relevant materials, and that such implementation has occurred. All processes and procedures which would result in the elimination, or transfer to a less-

accessible medium, of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced have been suspended.

(b)   Each Party acknowledges that it has an obligation to take reasonable and proportional steps to preserve potentially relevant ESI and Data Sources in the Party's possession, custody, or control, including the original forensic integrity of the ESI, unless otherwise agreed upon by the Parties. Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back up and archive ESI; provided, however, the Parties shall preserve non-duplicative, discoverable, or potentially relevant ESI currently in their possession, custody, or control. The Parties will further supplement any document and discovery responses in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is found, created, or recovered after a disclosure or response is made (unless otherwise excluded under this Order).

5.   **General Search Methodology for ESI**.

(a)   Scope of Search: Custodians and Non-Custodian Data Sources. In conducting a search for responsive ESI, the Responding Party shall search in both Non-Custodian Data Sources and all Custodian Data Sources for each Custodian identified in the Custodian Designations.

(b)   <u>Search Methodology</u>.

(i)   Focused search terms and queries should be employed using either unique search terms and/or Boolean logic, i.e., connectors or operators. A Boolean conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Searches shall also be reasonably limited as to the dates searched, taking into consideration the relevant dates for relevant events and communications. The Producing Party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

(ii)   In connection with each set of discovery requests, a Requesting Party may, but is not required to, include a list of reasonable search terms and date restrictions that the Responding Party, absent good faith written objection to the specific terms, shall employ in conducting any related search for ESI.

9

(iii) Before running searches, the Responding Party shall disclose a reasonable amount of proposed search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.

(iv) The Parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The Parties shall continue to cooperate in revising the appropriateness of the search methodology.

(v) Upon reasonable request, a Party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

(c) <u>Technology Assisted Review</u>. The use of Technology Assisted Review (TAR) and other analytics technology (e.g., email threading) shall be permitted,

10

including to make final production decisions, provided the Parties disclose its use prior to conducting searches. If needed, the Parties shall meet and confer to resolve any disagreements regarding the use of these analytical technology tools. If requested, the Responding Party shall disclose its TAR software, the TAR methodology used, the criteria used to identify the universe of documents to which TAR was applied (including any pre-culling of documents, search terms, domain filtering, file-type exclusions, minimum text requirements, etc.), the methodology of the training process, the targeted level of recall (e.g., 70%) (if any), the methodology and results of the validation testing used, and how documents containing little or no text (*e.g.*, media files, images, un-OCR'ed PDFs, encrypted files) were handled.

6.      **Productions and Format**. The Parties agree upon the following ESI production specifications:

(a)     Generally.

   (i)     Each Document produced shall contain a unique Bates Number, including TIFF images, Hardcopy Documents, and Documents produced in Native Format.

   (ii)    Documents may be produced on physical media or by secure electronic transmission, e.g., via FTA.

11

(iii)    The Parties agree that they will produce extracted text for correspondingly produced ESI in text files provided in the same folder with corresponding images and named to correspond to the Production ID. For redacted documents or documents without extractable text, OCR text will be provided for the non-redacted text.  All TIFF, PDF, or image-based file types in which text could not be extracted normally through standard ESI processing must be OCR processed prior to each Party running search terms. With respect to Hardcopy Documents, the Parties agree to produce OCR Text for Hardcopy Documents.

(b)    <u>Production of ESI and Electronic Documents</u>.

(i)    With the exception of the specific file types identified in the following Section, ESI and Electronic Documents shall be produced in text-searchable (OCR'ed), black and white, Group IV compression, single-page TIFF images at not less than 300 DPI resolution.

(ii)    The TIFF images shall be accompanied by a load file, e.g., .opt or .dii.

(iii)    All images related to the same Document should be contained in the same folder, with a maximum of 1,000 documents per folder. In addition, Electronic Documents shall be produced with corresponding Metadata, as described in **Appendix A**, in a separate data file. The Producing Party will produce relevant, non-privileged attachments to ESI (including

all email attachments) contemporaneously and in sequential order, e.g., the Producing Party will take reasonable steps to ensure that all electronic documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent email.

(iv)     For Electronic Documents and ESI, the Parties agree to produce the Metadata set forth in **Appendix A** in a .DAT file to the extent such Metadata is available, responsive, not privileged, and are already populated in the Party's normal course.

(v)      The Parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved. The Parties may also use industry standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message.

(c)     Specific Electronic File Types.

(i)      Excel Files. The Parties agree to produce electronic Excel spreadsheets in Native Format, with the exception that any Excel spreadsheet that requires redaction may be produced in PDF-format only; a Party may

13

also redact spreadsheets in Native Format by replacing privileged text with the designation "[**REDACTED**]" provided that doing so does not alter any other data in the spreadsheet, e.g., by altering formulas. Any Excel spreadsheet that is produced in Native Format must have a corresponding placeholder PDF image indicating its place in the production, its relationship to other documents in the production, and any other corresponding Metadata. To the extent that printouts or images of all or part of an Excel spreadsheet were also maintained in static form (e.g., as a PDF or a Hardcopy in a file), those documents will be produced as static images consistent with the specifications for Hardcopy Documents or Electronic Documents, whichever applies.

(ii)     PowerPoint Files. The Parties agree to produce Microsoft PowerPoint files as PDF images, rather than in Native Format, provided that any comments or speaker's notes in the Microsoft PowerPoint slides are produced as part of the "text only" Metadata for the document, or otherwise visible in the PDF image due to the print format of the Microsoft PowerPoint slide itself. To the extent that any Microsoft PowerPoint slides contain animations and/or transitions that would not be visible in a static PDF image, the Receiving Party may request these files in Native Format after identifying an objective reason as to why Native Format production is necessary.

(iii)     <u>Misc. Electronic Files</u>. To the extent that an Electronic File otherwise cannot be reduced to PDF images, e.g., audio or video files, the file shall be produced in Native Format with a corresponding placeholder PDF image.

(d)     <u>Production of Hardcopy Documents</u>.

(i)     Hardcopy Documents shall be scanned with OCR and produced as black and white, Group IV compression, single-page TIFF images at not less than 300 DPI resolution, with the document boundaries (BEGATT, ENDATT, as referenced in **Appendix A**) contained in a separate file. Reasonable efforts shall be made to scan the pages at or near their original size and so that the image appears straight and not skewed. Physically oversized originals, however, may appear reduced. In addition, reducing image size may be necessary to display Bates Numbers and Confidentiality designations without obscuring text.

(ii)     In scanning Hardcopy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., Hardcopy Documents should be logically unitized). In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs—the Document behind each tab

should be scanned separately, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Document and attachment fields.  The parties shall use their best efforts to unitize the Documents correctly.

(e)     <u>Other Issues</u>.

(i)     The Producing Party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

(ii)    No Party has an obligation to create or manually code information or fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain.

(iii)   On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

(iv)    If the Requesting Party seeks metadata, the Parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file

name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the Parties, particularly in light of the Data Source, advances and changes in technology, vendor, and business practices.

7. **Costs**.

(a) Generally, each Party shall bear their own costs for the production of ESI and Hardcopy Documents. However, the amount and nature of the claims being made by either Party, as well as the burdens associated with the proposed ESI preservation and discovery shall be considered and the court will apportion the costs of electronic discovery upon a showing of good cause.

(b) Notwithstanding the general rule that each Party shall bear its own discovery costs, if a Requesting Party requests unreasonable or additional searches, or the production of cumulative or repetitive information, the Responding Party may object. Upon objection, the Parties shall work in good faith to resolve the issue. If the Parties are unable to resolve their differences, the Responding Party may move the Court for an order shifting the cost of production to of additional searches or the production of cumulative or repetitive information that otherwise imposes an undue burden or expense to the Requesting Party.

8.    **Privilege.**

(a)    Each Party will review its documents, including ESI, for privileged information prior to production. Responsive documents withheld, or produced documents that have been redacted, on the grounds of any privilege or immunity will be identified in a privilege log.

(b)    Each Party will provide a log of those documents withheld as privileged or protected. The privilege log shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection), along with enough information sufficient to analyze the application of the privilege or protection. For emails, the privilege log shall include the following metadata fields for the top email of each email chain withheld (SENT DATE, SENT TIME, TO, FROM, CC, BCC and SUBJECT LINE) and, for all non-email documents withheld, the following fields (CREATED DATE, MODIFIED DATE, AUTHOR, LAST AUTHOR, FOLDER PATH, and FILENAME).   The Parties' privilege logs will also identify the privilege basis on which each document family was withheld and whether or not the family includes attachments. The Parties reserve the right to redact or otherwise modify the SUBJECT LINE, FILENAME, and FOLDER PATH field to avoid disclosing privileged information, so long as the redacted or modified entries are clearly identified and the information provided is sufficient to allow the other party to assess the basis for

18

the asserted privilege(s). The Receiving Party may request—for a reasonable and proportionate number of log entries that together amount to no more than 10% of the logged population—that the withholding party provide a narrative description of the contents of the privileged communication sufficient that explains the basis for the assertion of the privilege without revealing the substance of the communication.

(c)   Unless and until a non-waiver order is entered under Fed. R. Evid. 502(d), whether as part of a protective order or otherwise, should any produced ESI that appears on its face to contain privileged information or attorney-work product be detected by either the producing or receiving Party, proper notification shall be given in writing that identifies the specific materials and the receiving Party shall immediately sequester or destroy the privileged materials.

(d)   Redactions need not be logged so long as the basis for the redaction is clearly marked on the redacted document.

(e)   With respect to privileged or work-product information generated in connection with the preparation of the Complaint in the above-captioned matter, or after the filing of the Complaint, Parties are not required to include any such Documents in privilege logs.

Based on the foregoing, **IT IS SO ORDERED**.

Dated: August 6, 2025  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**STIPULATED AND AGREED:**

/s/ R.J Cronkhite  
R.J. Cronkhite (P78374)  
Cronkhite Counsel PLLC  
36800 Woodward Ave., Ste. 310  
Bloomfield Hills, MI 48304  
T: (248) 309-8602  
F: (248) 256-2555  
rj@cronkhitelaw.com  
*Attorneys for Plaintiff*

/s/ Daniel C. Waslawski (w/consent)  
Daniel C. Waslawski (P78037)  
Joanna H. Dreaver (P82154)  
Starr, Butler & Stoner, PLLC  
20700 Civic Center Dr., Ste. 290  
Southfield, MI 48076  
(248) 554-2700  
dwaslawski@starrbutler.com  
jdreaver@starrbutler.com  
*Attorney for Defendants*

## APPENDIX A

## MetaData Fields for Production

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |
| 4 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 5 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 6 | CUSTODIAN | Custodian to which the data is associated with. | John Doe |
| 7 | ALL CUSTODIAN | Other custodians to whom the document is associated | Mary Smith; Michael Jones |
| 8 | RECORDTYPE | Type of electronic record: | Email, Attachments, eDoc |
| 9 | FROM | Author of the e-mail message | Mary.Smith@hotmail.com |
| 10 | TO | Main recipient(s) of the e-mail message, by email address. | JohnDoe@gmail.com |
| 11 | CC | Recipient(s) of "Carbon Copies of the e-mail message. | Michael123@yahoo.com |

21

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 12 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| 13 | SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| 14 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 15 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 16 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 17 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 18 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 19 | DATEMODIFIED | Date when the file was last modified | 03/03/2019 |
| 20 | DATERECEIVED | Date message received | 02/24/2007 |
| 21 | TIMERECEV | Time message received | 11:20:33 |
| 22 | CONFIDENTIALITY | Confidentiality designation | Confidential; Attorney's Eyes Only |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 23 | TITLE | Title from document metadata | Board_Presentation_Q2 |
| 24 | AUTHOR | Document author from metadata | Barb Wire |
| 25 | COMPANY | Document company or organization from metadata | Client |
| 26 | FILESIZE | Size of native file, in bytes | 2546683 |
| 27 | PAGECOUNT | Number of pages | 3 |
| 28 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| 29 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| 30 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA00000001.txt |
| 31 | NATIVELINK | Path to the produced native file version (if applicable), for mapping | Natives\001\ABC00001.xls |

23